UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY MILLENDER,

                                              Case No. 07-14807

            Plaintiff,

v.                                            John Feikens
                                              United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                              Michael Hluchaniuk
                                              United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 7, 8)**

I.      **PROCEDURAL HISTORY**

        A.      Proceedings in this Court

        On November 8, 2007, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

John Feikens referred this matter to Magistrate Judge Charles E. Binder for the

purpose of reviewing the Commissioner's decision denying plaintiff's claim for a

period of disability, disability insurance, and Supplemental Security Income

benefits.  (Dkt. 2).  On January 14 2008, this matter was reassigned to the

undersigned.  (Dkt. 3).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 7, 8).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on September 21, 2005, alleging that he became unable to work on June 1, 2004.  (Dkt. 6, Transcript of Social Security Proceedings, at 46) ("Tr.").  The claim was initially disapproved by the Commissioner on February 2, 2006.  (Tr. at 39).  Plaintiff requested a hearing and, on February 1, 2007, plaintiff appeared without counsel before Administrative Law Judge (ALJ) Joel G. Fina, who considered the case *de novo*.  In a decision by the Appeals Council dated June 6, 2007, the ALJ found that plaintiff was not disabled.  (Tr. at 27).  Plaintiff requested a review of this decision on June 27, 2007.  (Tr. at 20).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 18, 2007, denied plaintiff's request for review.  (Tr. at 4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that plaintiff's motion for remand be **GRANTED** and that the motions for summary judgment by both parties be **DENIED**.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Testimony and Statements

Plaintiff was 44 years old at the time of the hearing before the ALJ.  (Tr. at 164).  He had an eleventh grade education and he had previously worked as a janitor, a lunchroom attendant and at a Family Dollar store.  (Tr. at 164-66).  He attributed his inability to work to his "hand" and Hepatitis C.  (Tr. at 166).  At the time of the hearing, he was receiving disability benefits from the State of Michigan and he was getting food stamps.  (Tr. at 168).

Plaintiff said it was difficult for him to shave due to the problems with his right had, where he had been stabbed, and he could not wash dishes due to the pain.  (Tr. at 169).  He could cook and vacuum (with his left hand) but he could not sweep or carry a clothes basket.  (Tr. at 169-170).  He said he could only carry things with his left hand and ate with his left hand.  (Tr. at 170-171, 175).  A friend does his shopping although he accompanies the friend.  (Tr. at 172).

He testified that the injury to his hand took place in 2001.  (Tr. at 175).  He acknowledged that he worked after the injury at a metal stamping plant but that employment resulted in carpel tunnel syndrome in his right hand.  (Tr. at 175-76).  He plans on having surgery for his carpel tunnel syndrome when his treatment for Hepatitis C is concluded.  (Tr. at 176).  One of the doctors he was treating with at

the time of the hearing was Dr. Hale (the transcript erroneously refers to a Dr. Hill) who treated him for his Hepatitis C. (Tr. at 180-181). Dr. Hale wanted him to continue his treatment for Hepatitis C for another six months because it was not yet reacting to the treatment he had been given. (Tr. at 180).

On a 10 point scale, plaintiff characterized his joint pain as an eight, his headache pain as a seven or eight, and the pain around his liver as four. (Tr. at 183-184). He takes Vicoden for his pain. (Tr. at 184-185).

B.     Medical Evidence

The medical records in this case date back to 2003. In January of 2003, lab tests were conducted on plaintiff for Hepatitis C. (Tr. at 115). In June of that year, he sought treatment for chest pain after consuming malt liquor, gin and crack cocaine and the tests done at that time were normal. (Tr. at 125-134). In January of 2004, plaintiff went to the hospital for headaches that were worse at work. (Tr. at 122-124). In May of that year he went to the hospital relating to abdominal pain. It was noted in those records that plaintiff had Hepatitis C, but that he had not taken medication for that illness for over six months. (Tr. at 119-121).

In August of 2005, plaintiff went to the hospital with an earache, which was diagnosed as sinusitis. (Tr. at 116-117). Dr. S.L. Schuchter examined plaintiff in January of 2006 at the request of the SSA and the State of Michigan. The report

from that examination indicated that plaintiff gave a history of being stabbed in the hand, around the thumb, in 1985 and that some "records" indicated he had Hepatitis C "in the past." The examination reflected that plaintiff had a reduced grip in his right hand, but that he was able to pick up coins with both hands. Dr. Schuchter concluded that plaintiff was "status post stab wound to the right thumb, with persistent pain." The doctor also noted that plaintiff had hypertension. No other significant abnormalities were noted. (Tr. at 135-138).

On January 31, 2006, a Physical Residual Functional Capacity Assessment was done on plaintiff. The report indicated plaintiff could (1) lift 50 pounds occasionally, (2) lift 25 pounds frequently, (3) stand or walk for 6 hours in an 8-hour workday, (4) sit for 6 hours in an 8-hour workday and (5) had an unlimited capacity to push or pull. (Tr. at 140). No additional limitations were noted except for those claimed by plaintiff which, according to the report, were "more severe than [the examination] suggests." The report further stated that plaintiff did his "own cooking and housework" and that he "drives and shops." (Tr. at 144).

In March of 2006, a Medical Examination Report was completed, which showed "weakness" of the right hand, mild carpal tunnel syndrome (based on an early March EMG), limitations of lifting of 20 pounds "frequently" and 25 pounds "occasionally" and limitations to pushing or pulling in his right hand. No other

mental or physical limitations were noted. (Tr. at 149). A Medical Needs Report done at the same time indicated that plaintiff had no employment-related limitations except that he should not use "vibrating equipment" with his right hand. (Tr. at 150).

In August of 2006, Dr. Hale, who had "started" to treat plaintiff for Hepatitis C, wrote a letter indicating that the treatment would last for 12 months and that the medication plaintiff would be taking was expected to result in side effects that would make him unable to work during the course of the therapy. (Tr. at 156). Dr. Hale wrote a second letter in January of 2007 indicating that plaintiff was in treatment for Hepatitis C and was experiencing a number of side effects including pain, nausea, depression, and irritability. (Tr. at 155).

C.    Vocational Expert

A vocational expert, Mary Williams, testified during the hearing. Ms. Williams was presented with two hypothetical situations relating to plaintiff's residual functional capacity. In the first of these hypotheticals, she was asked to assume that a person of plaintiff's age, education, work experience and skill set could perform light work. Certain limitations were included in the hypothetical including only occasional fine manipulation with the upper right extremity and the avoidance of concentrated use of moving machinery with respect to work that is

limited to simple, routine and repetitive tasks. (Tr. at 194). Ms. Williams stated that a person with those limitations could not perform plaintiff's past relevant work and there were no other jobs in the regional or national economy that fell within those limitations. (Tr. at 195).

The ALJ then modified the hypothetical to include "sedentary" rather than "light" work with other limitations similar to the first hypothetical. In response to this hypothetical, Ms. Williams stated that a person with these limitations could not perform plaintiff's past relevant work but that other jobs were available in the regional or national economy for a person with those limitations. (Tr. at 195-97).

D.     ALJ Findings and Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2007. (Tr. at 21). He then followed the five-step sequential evaluation process established in 20 C.F.R. § 404.1520(a) and § 416.920(a) in order to reach a decision on plaintiff's application. The ALJ initially concluded that plaintiff had not engaged in substantial gainful activity since the claimed onset of his disability which was June 1, 2004. While plaintiff had worked after that his employment did not amount to "substantial gainful activity." (Tr. at 21).

Plaintiff was found to have the following severe impairments: hepatitis C, post stab wound in the right upper extremity, chronic fatigue, depression, and right carpal tunnel syndrome. (Tr. at 21). While these impairments caused limitations in plaintiff's ability to perform certain tasks, they were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of Regulation No. 4 ("the listing"). (Tr. at 22). The ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform sedentary work that involved lifting up to 10 pounds occasionally, standing or walking up to 2 hours in an 8-hour day, sitting up to 6 hours in an 8-hour day with a sit or stand option at will, and other limitations. (Tr. at 23). In reaching his decision regarding the RFC, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the claimed symptoms, but also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 25).

Given the RFC finding the ALJ made, he went on to conclude that plaintiff could not perform his past relevant work. (Tr. at 26). After finding that plaintiff could not perform his past relevant work, the ALJ presented a hypothetical to the vocational expert that asked if a person with plaintiff's age, education, work experience and RFC could perform other work that was available in the regional

or national economy.  On obtaining an affirmative response from the vocational expert to this hypothetical question, the ALJ determined that plaintiff was not disabled under §§ 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act.  (Tr. at 27).

## III.  DISCUSSION

### A.  Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*per curiam*).  The Commissioner is charged with finding the facts relevant to an application for disability benefits.  A federal court "may not try the case *de novo* . . . ."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th

Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). The scope of the court's review is limited to an examination of the record only. *Brainard*, 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, on whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, 1992 WL 162557 (6th Cir. 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including

that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner*, 745 F.2d at 387-388.

    B.    <u>Governing Law</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). If relief is not

found during this administrative review process, the claimant may file an action in

federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).

"[B]enefits are available only to those individuals who can establish 'disability'

within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*)

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled. F. Bloch, Federal

Disability Law and Practice, § 1.1 (1984). While the two programs have different

eligibility requirements, both require a finding of disability for the award of

benefits.

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *see also Garcia v. Sec'y of Health & Human*

*Servs.*, 46 F.3d 552, 554 n. 2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human*

*Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

C.     Analysis and Conclusions

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of sedentary/light work. (Tr. at 23). Sedentary work is defined as follows:

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (1991). Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally

> total no more than about 2 hours of an 8-hour workday,
> and sitting should generally total approximately 6 hours
> of an 8-hour workday. Work processes in specific jobs
> will dictate how often and how long a person will need
> to be on his or her feet to obtain or return small articles.

After a review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this Circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff's position is premised on the contentions that (1) the hypothetical question posed to the vocational expert does not accurately describe plaintiff's limitations, (2) the ALJ did not properly evaluate the side effects from medication that plaintiff testified about when the ALJ determined that plaintiff's testimony was not credible and (3) the ALJ did not properly give deferential weight to the

Report and Recommendation
Cross-Motions for Summary Judgment
*Millender v. Comm'r*; 07-14884

statements of Dr. Hale, a treating physician. Defendant's response to plaintiff's

position is that the hypothetical is accurate in that it properly described plaintiff's

functional limitations for the vocational expert and that the ALJ gave adequate

reasons for not giving significant weight to the opinions expressed by Dr. Hale.

The hypothetical relied on by the ALJ in determining that plaintiff was not

disabled was the following:

> ... assume a person of claimant's age, education and
> work experience and skill set and was able to perform
> sedentary work. By that I mean lift up to ten pounds
> occasionally, stand or walk for up to two eight [sic]
> hours per eight-hour workday with normal breaks, sit for
> up to six hours per eight-hour workday with normal
> breaks, allowing the person to sit or stand alternatively at
> will while never climbing ladders, ropes or scaffolds,
> only occasionally climbing ramps or stairs, never
> kneeling, never crouching, never crawling. With only
> occasional fingering with the upper right extremity,
> which is the dominant, dominant upper extremity. By
> that I mean fine manipulation of items no smaller than
> the size of a ballpoint pen, with no limitation of fingering
> to the left upper extremity, while avoiding concentrated
> use of moving machinery and avoiding concentrated
> exposure to unprotected heights in work which is limited
> to simple, routine and repetitive tasks.

(Tr. at 195-196).

Plaintiff argues that the hypothetical was improper because it does not

include the limitations that the ALJ found applicable to plaintiff. Specifically, the

ALJ determined that plaintiff suffered "moderate difficulties in maintaining concentration, persistence or pace." Included in the hypothetical was the limitation that the work must be "limited to simple, routine and repetitive tasks." A hypothetical must "accurately [set] forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). In creating a hypothetical for a vocational expert, the ALJ is obligated to "translate the [plaintiff's deficiencies] into a set of specific limitations that are properly rooted in the administrative record." *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005).

In *Smith*, the ALJ had determined that plaintiff "often" suffered "deficiencies of concentration, persistence or pace" and, in the hypothetical for the vocational expert, included a limitation that restricted the jobs to those that were "routine and low stress, and do not involve intense interpersonal confrontations [or] high quotas." The *Smith* court found that those deficiencies were properly incorporated into the hypothetical affirmed the ruling in favor of the Commissioner. In *Bohn-Morton*, the ALJ had determined that plaintiff "often" suffered from "a deficiency of concentration, persistence, or pace." The hypothetical there included a limitation to "simple and rote type job tasks."

Based on the guidance from *Smith* and *Bohn-Morton*, the hypothetical posed to the vocational expert in the present case accurately incorporated the deficiencies as found by the ALJ.  The testimony of the vocational expert could, therefore, serve as substantial evidence supporting the ruling of the ALJ if plaintiff's deficiencies were properly determined by the ALJ.

Plaintiff argues that the ALJ did not properly evaluate plaintiff's testimony relating to his limitations arising from the side effects of the medication he was taking.  In this regard, the ALJ found "that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. at 25).  Normally, the ALJ's credibility finding is entitled to deference and should not be disregarded given the ALJ's opportunity to observe the plaintiff's demeanor.  However, if the ALJ rejects the testimony of the plaintiff as not being credible, the ALJ must clearly state the reasons for that conclusion.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  In commenting on plaintiff's credibility, the ALJ noted that he considered the requirements of, among other provisions, 20 C.F.R. § 404.1529 as well as SSR 96-7p.  (Tr. at 23).  The ALJ then listed a number of factors that might have related to plaintiff's credibility, but did not indicate which, if any, of those factors actually reflected on plaintiff's credibility.

SSR 96-7p provides that:

> the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individuals allegations have been considered" or that "the allegations are (or are not) credible." ***It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision***.

(Emphasis added). The record in the present case clearly demonstrates that the ALJ, contrary to the requirements of SSR 96-7p, simply recited factors that could have been considered relating to plaintiff's credibility and then, in a conclusory fashion, stated that plaintiff's claims were "not entirely credible." (Tr. at 24-25). This methodology is not acceptable. *Felisky*, 35 F.3d at 1039. A review of the record suggests that there may be reasons to question the credibility of some of the

claims made by plaintiff with respect to his limitations, but that decision is for the ALJ, not the reviewing court. Where the Commissioner has not followed its own rules, the case should be remanded even if evidence in the record might otherwise support the decision of the Commissioner. *Wilson v. Comm'r of Social Security, 378 F.3d 541, 546 (6th Cir. 2004)*.

Plaintiff's third claim of error is that the ALJ did not give sufficient weight to the opinion of Dr. Hale, one of plaintiff's treating physicians. The record includes two letters from Dr. Hale, one dated August of 2006, (Tr. at 156) and the other dated January of 2007 (Tr. at 155). While the letters from Dr. Hale included an opinion that plaintiff would not be able to work while undergoing treatment for Hepatitis C, the ALJ found that opinion "not persuasive because it offers no residual functional capacity limitations or supporting evidence showing how she reached the conclusion that the claimant is disabled for 12 months" and because it was inconsistent with another medical report from a different treating physician. (Tr. at 25).

According to 20 C.F.R. § 404.1527(d)(2), an ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." The

regulation also requires the ALJ to give "reasons" for the weight given to the treating source's opinion. Here, the ALJ gave reasons for not finding Dr. Hale's opinion persuasive, including the lack of any "residual functional capacity limitations," the lack of any supporting evidence on which the doctor's opinion was based, and the inconsistency of the opinion with another treating physician. The absence of substantiating medical data or other evidence is an appropriate reason to not credit the opinion of a treating physician. *Cutlip v. Sec'y of Health and Human Serv.*, 25 F.3d 284, 287 (6th Cir. 1994). The reasons given by the ALJ for not fully crediting the opinion of Dr. Hale provide an appropriate record-based ground for doing so and otherwise meet the requirements of § 404.1527(d)(2).

The District Court is permitted, pursuant to 42 U.S.C. § 405(g), to enter a judgment reversing the findings of the Commissioner and remanding for a hearing. In light of the above determination that the ALJ did not properly make findings relating to the credibility of the plaintiff, it is recommended that the case be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration. *Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 175-76 (6th Cir. 1994).

## IV.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service,

as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections,

the opposing party may file a response.  The response shall not exceed 20 pages in

length unless such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the

objections by motion and order.  If the Court determines any objections are

without merit, it may rule without awaiting the response to the objections.

|  | s/Michael Hluchaniuk |
|---|---|
| Date: November 18, 2008 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>November 18, 2008,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Mikel E. Lupisella, William Woodard, and Commissioner of Social Security</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>not applicable</u>.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov